IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EXELIXIS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HANDA PHARMACEUTICALS, INC., HANDA PHARMA, INC., AND HANDA ONCOLOGY, LLC,<br><br>Defendants. | ) | C.A. No. ____________________<br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

1. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, against Defendants Handa Pharmaceuticals, Inc. ("Handa Pharmaceuticals"), Handa Pharma, Inc. ("Handa Pharma"), and Handa Oncology, LLC ("Handa LLC") (collectively, "Defendants" or "Handa"). This action arises out of Handa LLC's submission, pursuant to § 505(b)(2) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(b)(2), of 505(b)(2) New Drug Application No. 220613 ("505(b)(2) NDA") to the U.S. Food and Drug Administration ("FDA"), seeking (and receiving) approval to manufacture and sell cabozantinib capsules (the "Handa Cabozantinib Product") prior to the expiration of U.S. Patent No. 12,778,942 (the "'942 Patent" or the "Asserted Patent").

## PARTIES

2. Plaintiff Exelixis, Inc. ("Exelixis") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1851 Harbor Bay Parkway, Alameda, California 94502. Exelixis is engaged in the business of creating, developing, and bringing to market new medicines for difficult-to-treat cancers.

3. Exelixis sells CABOMETYX® throughout the United States, including in Delaware. CABOMETYX® is an oral drug product (tablets) containing the active ingredient cabozantinib (L)-malate. CABOMETYX®, which was initially approved by the FDA on April 25, 2016, is now indicated for the treatment of (i) patients with advanced renal cell carcinoma (RCC); (ii) patients with advanced renal cell carcinoma, as a first-line treatment in combination with nivolumab; (iii) patients with hepatocellular carcinoma (HCC) who have been previously treated with sorafenib; (iv) adult and pediatric patients 12 years of age and older with locally advanced or metastatic differentiated thyroid cancer (DTC) that has progressed following prior VEGFR-targeted therapy and who are radioactive iodine-refractory or ineligible; (v) adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated pancreatic neuroendocrine tumors (pNET); and (vi) adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated extra-pancreatic neuroendocrine tumors (epNET).

4. Upon information and belief, Handa Pharmaceuticals is a corporation organized and existing under the laws of Taiwan, having a principal place of business at 3F-1&3F-2, No.23, Nanke 3rd Rd., Xinshi Dist., Tainan City 744094, Taiwan.

5. Upon information and belief, Handa Pharmaceuticals is in the business of, among other things, developing, manufacturing, and selling pharmaceutical drug products for distribution in the United States market, including in this judicial district, through various directly or indirectly owned operating subsidiaries, including Handa Pharma and Handa LLC.

6. Upon information and belief, Handa Pharma is a corporation organized and existing under the laws of Delaware, having a principal place of business at 2025 Gateway Place, Suite 480, San Jose, CA 95110.

7. Upon information and belief, Handa Pharma is a wholly-owned subsidiary of Handa Pharmaceuticals and is controlled and/or dominated by Handa Pharmaceuticals. Upon information and belief, Handa Pharma manufactures, distributes and/or imports pharmaceutical drug products for sale throughout the United States, including in Delaware, at the direction, under the control, and for the direct benefit of its parent company, Handa Pharmaceuticals. Upon information and belief, Handa Pharmaceuticals established Handa Pharma for the purposes of manufacturing, distributing, marketing, offering for sale and/or selling their drug products throughout the United States, including in this judicial district.

8. Upon information and belief, Handa LLC is an entity organized and existing under the laws of California, having a principal place of business at 2025 Gateway Place, Suite 480, San Jose, CA 95110.

9. Upon information and belief, Handa LLC is a wholly-owned subsidiary of Handa Pharma and is controlled and/or dominated by Handa Pharmaceuticals and Handa Pharma. Upon information and belief, Handa LLC manufactures, distributes and/or imports drugs for sale throughout the United States, including in Delaware, at the direction, under the control, and for the direct benefit of its parent companies, Handa Pharma and Handa Pharmaceuticals. Upon information and belief, Handa Pharmaceuticals and/or Handa Pharma established Handa LLC for the purposes of manufacturing, distributing, marketing, offering for sale and/or selling their drug products throughout the United States, including in this judicial district.

10. Upon information and belief, Defendants are intertwined and collaborate in the manufacture and importation of pharmaceutical products (including drug products manufactured and sold pursuant to regulatory approval), as well as the marketing or sale of such pharmaceutical products throughout the United States, including in Delaware. For example, upon information and

belief, Handa Pharmaceuticals serves as Handa's headquarters and global research and development ("R&D") center, while Handa Pharma is responsible for business development, intellectual property, and regulatory affairs, and Handa LLC is responsible for all business related to its oncology drugs. Upon information and belief, Handa's overall business strategy includes using Handa Pharmaceuticals, its Taiwan headquarters, as its global R&D center and establishing its presence in the U.S. market through its U.S. subsidiaries, Handa Pharma and Handa LLC. Upon information and belief, Dr. Fang-yu ("Bill") Liu is the founder, President, and Chairman of the Board of Directors of Handa Pharmaceuticals, as well as the President of Handa Pharma and the Chief Executive Officer of Handa LLC.

11. Upon information and belief, Defendants acted collaboratively in the preparation and submission of 505(b)(2) NDA No. 220613.

12. Upon information and belief, Handa LLC's preparation and submission of its 505(b)(2) NDA to the FDA was done at the direction, under the control, and for the benefit of Handa Pharmaceuticals and Handa Pharma. For example, Handa Pharmaceuticals maintains a website, www.handapharma.com.tw, representing that "[t]he company's business strategy comprises of utilizing our Taiwan headquarters as our global R&D center and establishing our presence in the world's two largest pharmaceutical markets (the US and China)."[1] Handa Pharmaceuticals' website specifically identifies OMCAZIO™, the Handa Cabozantinib Product, as one of its 505(b)(2) drug products that has obtained FDA final approval.[2] Handa Pharma has

[1] *See* Handa Pharma, About Handa, https://handapharma.com.tw/about-en/company/.
[2] *See* Handa Pharma, OMCAZIO, https://handapharma.com.tw/r%EF%BC%86d/hnd-039/; *see also* Shangwei Qin et al., *A Novel Cabozantinib Formulation with Improved Safety and Bioavailability: Preclinical Validation in Rats*, Cancer Chemotherapy & Pharmacol. 26 (Mar. 14, 2026).

also held itself out as the "developer/owner of the cabozantinib alternate-salt capsule formulation"[3] in a poster presented at the ASCO Genitourinary Cancers Symposium. On information and belief, Handa Pharma's statement is in reference to the Handa Cabozantinib Product.

13. Upon information and belief, following FDA's September 3, 2026, final approval of its 505(b)(2) NDA, Handa Pharmaceuticals, Handa Pharma, and Handa LLC will work in concert with one another to make, use, offer to sell, and/or sell the Handa Cabozantinib Product throughout the United States, including in Delaware, and/or import such products into the United States, including into Delaware.

## JURISDICTION AND VENUE

14. This case arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

15. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

16. This Court has personal jurisdiction over Handa because, among other things, Handa has committed, aided, abetted, contributed to, and/or participated in an act of patent infringement under 35 U.S.C. §§ 271(a), (b), and/or (c) and/or intends to engage in a future course of conduct that includes acts of patent infringement under 35 U.S.C. §§ 271(a), (b), and/or (c), including in Delaware. These acts have led and will lead to foreseeable harm and injury to Exelixis, a Delaware corporation, in Delaware. For example, on information and belief, Handa (to the extent it has not already) intends to manufacture, use, import, sell, and/or offer for sale the

[3] Jaymes Holland et al., *Abstract 524714: A Novel Cabozantinib Alternate-Salt Capsule Formulation: Bioequivalent Exposure and Reduce PK Variability with Model-Informed Treatment Continuity Assessments in Renal Cell Carcinoma*, poster presented at ASCO Genitourinary Cancers Symposium, February 2026.

Handa Cabozantinib Product in the United States, including in Delaware, prior to the expiration of the Asserted Patent.

17. The Court also has personal jurisdiction over Handa because, among other things, this action arises from Handa's actions directed toward Delaware, and because Handa has purposefully availed itself of the rights and benefits of Delaware law by engaging in systematic and continuous contacts with Delaware, including through Handa Pharma.

18. This Court has personal jurisdiction over Handa Pharmaceuticals, Handa Pharma, and Handa LLC because, upon information and belief, Handa Pharmaceuticals, Handa Pharma, and Handa LLC currently manufacture and distribute drug products for sale throughout the United States, including in Delaware.

19. This Court also has personal jurisdiction over Handa Pharma by virtue of, among other things, the fact that Handa Pharma is organized and exists under the laws of the State of Delaware.

20. Handa Pharmaceuticals and Handa Pharma have previously availed themselves of this forum by affirmatively filing responsive pleadings and motions in other actions before this Court, including *Novartis Pharmaceuticals Corporation v. Handa Neuroscience, LLC*, *Handa Pharma, Inc., Handa Pharmaceuticals, Inc., and Handa Pharmaceuticals, LLC*, C.A. No. 22-352 (D. Del.) (transferred from the United States District Court for the Northern District of California via a joint stipulation to transfer this case to the United States District Court for the District of Delaware) and *Novartis Pharmaceuticals Corporation v. Handa Neuroscience, LLC*, *Handa Pharma, Inc., Handa Pharmaceuticals, Inc., and Handa Pharmaceuticals, LLC*, C.A. No. 21-645 (D. Del.).

21. On information and belief, Handa Pharmaceuticals' contacts with other states of the United States are no greater than its contacts with Delaware. Therefore, to the extent Handa Pharmaceuticals denies that this Court has personal jurisdiction over them because of a purported lack of systematic and continuous contacts with Delaware, this Court has personal jurisdiction over Handa Pharmaceuticals pursuant to Federal Rule of Civil Procedure 4(k)(2).

22. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1400(b) because Handa Pharma is incorporated under the state laws of Delaware and therefore resides in the District of Delaware.

23. Venue is also proper in this Court under 28 U.S.C. § 1391(c)(3) because Handa Pharmaceuticals is not a resident of the United States and may thus be sued in any judicial district. Further, Handa LLC is a wholly-owned subsidiary of Handa Pharma and is controlled and/or dominated by Handa Pharmaceuticals and Handa Pharma.

## BACKGROUND

24. Exelixis sells and manufactures its blockbuster drug, CABOMETYX® (cabozantinib), which is a tyrosine kinase inhibitor for oral administration approved by the FDA for the treatment of patients with advanced kidney cancer (renal cell carcinoma) as a monotherapy and in combination with nivolumab. It is also approved to treat patients with liver cancer (hepatocellular carcinoma) who have been previously treated with the medicine sorafenib; adult and pediatric patients 12 years of age and older with locally advanced or metastatic thyroid cancer (differentiated thyroid cancer) that has progressed following prior VEGFR-targeted therapy and who are radioactive iodine-refractory or ineligible; adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated pancreatic neuroendocrine tumors (pNET); and adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated

extra-pancreatic neuroendocrine tumors (epNET). Exelixis sells CABOMETYX® in the United States pursuant to New Drug Application No. 208692, which was originally approved by the FDA in 2016.

## ASSERTED PATENT

25. In its on-going development of cabozantinib, Exelixis has obtained several patents directed to innovative products, methods, and processes, including the Asserted Patent U.S. Patent No. 12,778,942.

26. The ’942 Patent (Exhibit A), titled “Processes for Preparing Quinoline Compounds and Pharmaceutical Compositions Containing Such Compounds,” was duly and legally issued by the U.S. Patent and Trademark Office on November 3, 2026. The ’942 Patent will expire on February 10, 2032. The claims of the ’942 Patent are valid, enforceable, and not expired. All rights and interests in the ’942 Patent are owned by and assigned to Exelixis.

27. The ’942 Patent claims a pharmaceutical composition comprising cabozantinib or a pharmaceutically acceptable salt thereof, and a surfactant, wherein the pharmaceutical composition contains 100 ppm or less, 50 ppm or less, 25 ppm or less, 10 ppm or less, or 5 ppm or less of 6,7-dimethoxy-quinoline-4-ol.

## THE HANDA CABOZANTINIB PRODUCT

28. Upon information and belief, Handa submitted its 505(b)(2) NDA to the FDA on September 29, 2025.[4] By letter dated November 25, 2025 (the “Notice Letter”), Handa notified Exelixis that Handa submitted its 505(b)(2) NDA to the FDA.

[4] Handa Pharmaceuticals Submits FDA New Drug Application for Cancer 505(b)(2) Candidate HND-039, Oct. 2, 2025, https://www.taiwan-healthcare.org/en/news-detail?id=0t3hby15q1dz063r.

29. Upon information and belief, Handa intends to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of the Handa Cabozantinib Product upon FDA's final approval of its 505(b)(2) NDA. By way of example, in the Notice Letter, Handa represented that it sought authorization to commercially market the Handa Cabozantinib Product as soon as the expiration of U.S. Patent No. 7,579,473, which expired on August 14, 2026.

30. In the Notice Letter, Handa notified Exelixis that it had submitted a 505(b)(2) NDA application to the FDA for cabozantinib capsules, 11.5 mg, 23 mg, and 34.5 mg. Handa asserted that its Cabozantinib Product contains the active ingredient cabozantinib "in the form of cabozantinib lauryl sulfate." Handa further represented that "the dosage form is a capsule that will be sold in 11.5 mg, 23 mg and 34.5 mg strengths of cabozantinib."[5] Handa further asserted that its Cabozantinib Product is bioequivalent to CABOMETYX®.

31. On information and belief, the Handa Cabozantinib Product contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol. In the Notice Letter, Handa does not deny that its Cabozantinib Product contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol. The Notice Letter does not deny that the Handa Cabozantinib Product contains 100 ppm or less, 50 ppm or less, 25 ppm or less, 10 ppm or less, or 5 ppm or less of 6,7-dimethoxy-quinoline-4-ol when addressing a related patent that claims a pharmaceutical composition comprising a particular cabozantinib salt with 100 ppm or less, 50 ppm or less, 25 ppm or less, 10 ppm or less, or 5 ppm or less of 6,7-dimethoxy-quinoline-4-ol.

32. Upon information and belief, the Handa Cabozantinib Product, and the manufacture, use, sale, offer for sale, and/or importation thereof, infringes the Asserted Patent because the Handa Cabozantinib Product is a pharmaceutical composition comprising

[5] November 25, 2025 Notice Letter at 2.

cabozantinib, or a pharmaceutically acceptable salt thereof, and a surfactant, wherein the pharmaceutical composition contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol.

33. Handa announced on September 12, 2026, that the FDA granted final approval of Handa's 505(b)(2) NDA, which authorizes Handa to commercialize its infringing Cabozantinib Product in the United States under the trade name OMCAZIO™. Handa indicated in the same press release that it "expects to provide additional information regarding U.S. commercial availability of OMCAZIO in a subsequent announcement." *See* Handa Oncology Receives FDA Final Approval for OMCAZIO™ (cabozantinib) Capsules (September 12, 2026), https://handapharma.com/handa-oncology-receives-fda-final-approval-for-omcazio-cabozantinib-capsules/.

34. In earlier public announcements that Handa made prior to FDA's final approval, Handa made it clear that it intends to market its infringing Cabozantinib Product upon approval. For example, in its press release announcing the tentative approval of Handa's 505(b)(2) NDA, Handa's Chairman and CEO, Dr. Liu, stated that "We are continuing our commercial readiness activities and look forward to making OMCAZIO available to patients following FDA final approval." *See* Handa Oncology Receives FDA Tentative Approval for OMCAZIO™ (cabozantinib) Capsules (Aug. 4, 2026), https://handapharma.com/handa-oncology-receives-fda-tentative-approval-for-omcazio-cabozantinib-capsules/. Handa has also announced that it is "planning to build its own sales team of approximately 16 people in the U.S." and "has already begun U.S. market preparations, including engaging key opinion leaders, studying oncology drug distribution channels, and planning for market access and sales team deployment."[6]

[6] Handa Pharmaceuticals Nears FDA Approval for Multi-Target Cancer Drug, Plans 16-Person U.S. Sales Team to Target $2.1 Billion Market, BigGo Fin.,

35. Handa's express statements regarding its ongoing launch preparations demonstrate Handa's intent to commercially import and sell its product in the United States upon FDA approval.

**CLAIMS FOR RELIEF**

**COUNT 1: DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 12,778,942**

36. Exelixis incorporates each of the preceding paragraphs 1-35 as if fully set forth herein.

37. On information and belief, Handa's importation into the U.S. of the Handa Cabozantinib Product, and/or Handa's making, offering to sell, selling, and/or using the Handa Cabozantinib Product within the U.S., prior to expiration of the '942 Patent, would infringe at least claims 1-6 of the '942 Patent under 35 U.S.C. §§ 271(a), (b), and/or (c), either literally or under the doctrine of equivalents.

38. Handa sought FDA authorization to commercially market the Handa Cabozantinib Product as soon as August 14, 2026. Handa has now received FDA final approval of its 505(b)(2) NDA to engage in such commercial manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product before the expiration of the '942 Patent.

39. Handa infringes at least claims 1-6 of the '942 Patent.

40. For example, claim 1 of the '942 Patent recites a pharmaceutical composition comprising cabozantinib, or a pharmaceutically acceptable salt thereof, and a surfactant, wherein the pharmaceutical composition contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol.

---

https://finance.biggo.com/news/143ba4e7-dc98-41b6-9e33-9b155001f445 (last visited June 25, 2026).

41. The Notice Letter states that the Handa Cabozantinib Product comprises cabozantinib, or a pharmaceutically acceptable salt thereof, and a surfactant. For example, the Notice Letter states that "[t]he Handa product is a capsule for oral administration wherein the capsule contains 11.5 mg, 23 mg, or 34.5 mg of cabozantinib in the form of cabozantinib lauryl sulfate salt."[7]

42. The Handa Cabozantinib Product comprises a surfactant. The Notice Letter states that "[t]he Handa product is a capsule containing cabozantinib lauryl sulfate salt as the active pharmaceutical ingredient and a surfactant."[8] Handa's approved package insert lists the ingredients in The Handa Cabozantinib Product as cabozantinib laurylsulfate, ammonia solution, ascorbic palmitate, black iron oxide, FD&C Blue #1, gelatin, polyoxyl 32 stearate, potassium hydroxide, propylene glycol, shellac, titanium dioxide, and tocopherol. *See* OMCAZIO™ Label at 27.

43. On information and belief, the Handa Cabozantinib Product contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol. In the Notice Letter, Handa does not deny that its Cabozantinib Product contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol. For example, the Notice Letter states that the Handa product does not infringe claims 1-5 of U.S. Patent No. 12,128,039 (the "'039 Patent"). Claim 1 of the '039 Patent is directed to a pharmaceutical composition comprising cabozantinib malate salt, wherein the pharmaceutical composition contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol. The Notice Letter does not deny that the Handa Cabozantinib Product contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol. Instead, the only asserted basis of noninfringement of the '039 Patent is that the Handa

[7] November 25, 2025 Notice Letter at 4.
[8] November 25, 2025 Notice Letter at 17, 38.

Cabozantinib Product does not include a cabozantinib malate salt. Claims 2-5 depend from claim 1 and specify that the amount of 6,7-dimethoxy-quinoline-4-ol is 50 ppm or less, 25 ppm or less, 10 ppm or less, or 5 ppm or less. The Notice Letter similarly does not deny that the Handa Cabozantinib Product contains 50 ppm or less, 25 ppm or less, 10 ppm or less, or 5 ppm or less of 6,7-dimethoxy-quinoline-4-ol.

44. A substantial and justiciable controversy exists between the parties hereto as to the infringement of the ’942 Patent.

45. Pursuant to 28 U.S.C. § 2201, Exelixis is entitled to a declaratory judgment that Handa’s imminent manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product will infringe the ’942 Patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

46. Unless Handa is enjoined from infringing the ’942 Patent, Exelixis will suffer irreparable injury. Exelixis has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

47. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Exelixis asks that this Court grant the following relief:

48. A declaratory judgment that the claims of the Asserted Patent are not invalid and are not unenforceable and that Handa’s manufacture, use, offer to sell, sale, and/or importation of the Handa Cabozantinib Product prior to the expiration of the Asserted Patent, will infringe the Asserted Patent, either literally or under the doctrine of equivalents, under 35 U.S.C. §§ 271(a), (b), and/or (c);

49. An Order permanently enjoining Handa, and its affiliates, subsidiaries, and/or each of its officers, agents, servants, and employees, and those acting in privity or concert with Defendants, from manufacturing, using, offering to sell, selling, and/or importing the Handa Cabozantinib Product until after the Asserted Patent's expiration, including any extensions and/or additional periods of exclusivity to which Exelixis is or becomes entitled;

50. Damages or other monetary relief, including costs, fees, pre-judgment interest, and/or post-judgment interest, to Exelixis if Handa engages in commercial manufacture, use, offers to sell, sale, and/or importation into the United States of the Handa Cabozantinib Product prior to the expiration of the Asserted Patent, including any extensions and/or additional periods of exclusivity to which Exelixis is or becomes entitled, as well as any damages or other monetary relief on the basis that this is an exceptional case; and

51. Such further and other relief as this Court deems proper and just.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

Rodger D. Smith (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
Rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Exelixis, Inc.*

OF COUNSEL:

Lisa J. Pirozzolo
Emily R. Whelan
Kevin S. Prussia
Jonathan A. Cox
Apoorva Dixit
Leah Yen Jarrett
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Amy K. Wigmore
Charles T. Cox
Gerard A. Salvatore
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

Chris M. Cherry
WILMER CUTLER PICKERING
HALE AND DORR LLP
17th Street Plaza
1225 17th Street, Unit 2600
Denver, CO 80202
(720) 274-3135

Anna Mizzi
Alexander P. Gorka
Xinni Cai
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street, 45th Floor
New York, NY 10007
(212) 230-8800

Bansri Patel
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

November 3, 2026